UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                          Criminal No. 15-106 (PJS/FLN)

             Plaintiff,

    v.                                          **REPORT AND**
                                                             **RECOMMENDATION**
Daniel Alfred Adams,

             Defendant.

___

Thomas Calhoun-Lopez, Assistant United States Attorney, for Plaintiff.
Shannon Elkins, Assistant Federal Defender, for Defendant.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 10, 2015 on Defendant's motion to suppress search and seizure evidence (ECF No. 17). The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Government offered testimony from Officer Jeffrey Werner of the Minneapolis Police Department. Additionally, Defendant offered testimony from Jerrina Goines and introduced four exhibits.[1] For the reasons set forth below, the Court recommends that Defendant's motion be **GRANTED in part** and **DENIED in part**.

## I. FINDINGS OF FACT

On October 25, 2013, Officer Jeffrey Werner of the Minneapolis Police Department received a tip from a confidential informant claiming that a man named "Teto" was selling heroin out of an apartment building located at 3xxx 22nd Avenue South in Minneapolis. Officer Werner testified that

---

[1] The exhibits and witnesses are outlined in an Exhibit and Witness List posted to CM/ECF. *See* ECF No. 40.

he had worked with this confidential informant for over a year and considered the informant to be very reliable. Officer Werner believed "Teto" to be M.E.L., a known drug trafficker. Accordingly, Officer Werner positioned himself on 22nd Avenue South in order to conduct surveillance of M.E.L.'s apartment building.

During the course of this surveillance, Officer Werner observed M.E.L. conduct three hand-to-hand transactions with various individuals which, in light of his training and experience, he believed to be drug transactions.[2] The first transaction occurred when M.E.L. exited his apartment building and met with a party that was waiting by his front door. The parties engaged in a brief conversation, exchanged something by hand, and then abruptly went their separate ways. Officer Werner described this type of interaction as a "textbook hand-to-hand transaction" involving the sale of drugs, which he found to be consistent with his narcotics investigation experience.

The second hand-to-hand transaction occurred approximately five minutes later when a female arrived at M.E.L.'s front door. As before, M.E.L. came outside and the two of them engaged in a brief conversation, exchanged something by hand, and then went their separate ways. After this second transaction, M.E.L. did not go back inside his apartment; rather, he instead began walking northbound on 22nd Avenue towards the Hi-Lake strip mall nearby. While standing in front of the Hi-Lake Liquor Store, M.E.L. engaged in a third hand-to-hand transaction with another female. Upon observing the third hand-to-hand transaction, Officer Werner decided to arrest M.E.L. Before

---

[2] Officer Werner has over twenty-two years of experience as a police officer and has been involved in hundreds of narcotics investigation cases. Additionally, Officer Werner has received formal narcotics training including the Minnesota Bureau of Criminal Apprehension basic and advanced narcotics school, as well as the Minnesota State Patrol two-day drug interdiction school. Officer Werner is also a certified narcotics instructor, responsible for training other officers within the police department and certifying them as drug testers.

moving in to take M.E.L. into custody, however, Officer Werner radioed for assistance from other members of the Third Precinct Community Response Team. Five additional police officers arrived on the scene in three squad cars (one marked, two unmarked).

After back-up had arrived, but before Officer Werner could give the order to move in, he observed M.E.L. approach a silver Dodge sedan that had just recently parked in the liquor store parking lot. Officer Werner decided to get a closer look and surreptitiously moved in on foot to within fifteen or twenty feet of the vehicle to get a better view. From this new vantage point, Officer Werner saw M.E.L. leaning into the open passenger side window of the vehicle with his forearms on the window ledge and his hands inside the passenger compartment. At this point, Officer Werner suspected that a fourth drug transaction was taking place and ordered the other officers to move in and arrest both M.E.L. and the occupants of the vehicle.

Once the marked squad car pulled up into position behind the Dodge sedan, Officer Werner approached the vehicle and observed four occupants: a female driver, a male front-seat passenger, and another adult male and child in the rear-seat. The adult male in the rear-seat, later identified as Defendant Daniel Adams, was seated on the driver's side. As Officer Werner approached the car, both Adams and the front-seat passenger appeared to notice the police presence and Officer Werner noted a change in their facial expressions. Adams, who was initially seated in a relaxed position, suddenly sat up straight and then leaned forward and appeared to place something into the map pocket behind the driver's seat.

Officers took M.E.L. into custody first, and then ordered the occupants of the vehicle out one at a time. Officer Werner ordered the front-seat passenger out, handcuffed him, and patted him down for weapons. Next, Officer Werner ordered Adams out of the car, handcuffed him, and likewise

3

patted him down for weapons. While patting down Adams, however, Officer Werner felt a "hard object" between his buttocks. According to Officer Werner, criminals often hide narcotics, contraband, money, and even weapons in their buttocks. In this instance, Officer Werner suspected that the "hard object" was in fact narcotics due its small size. Adams denied that he had hidden anything in his buttocks. Officer Werner secured Adams so that he would be unable to dispose of the suspected narcotics, and placed him in the back of a squad car to be transported back to the police station.

After Adams was secured, Officer Werner directed Officer Jamie Karshbaum to search the area around the map pocket inside the Dodge sedan and see if anything had been placed there by Adams. Officer Karshbaum found a semi-automatic handgun in the map pocket. Back at the police station, Officer Werner and two other officers brought Adams into a private room and conducted a strip search. One solid chunk of heroin weighing 10.3 grams was found between Adams' buttocks. Officer Werner also testified that a search of M.E.L. produced sixteen bindles of heroin which were found concealed in his crotch area.

Officer Werner learned that the silver Dodge sedan was owned by the female driver—Jerrina Goines. Goines indicated that Adams was a friend of the front-seat passenger, and she was giving him a ride to the Hi-Lake Liquor Store. Goines testified that she did not hear any talk of drugs nor did she see any cash or drugs exchanged between M.E.L. and the front-seat passenger. Goines also stated that she did not know M.E.L. and could not recall the details of M.E.L.'s conversation with the front-seat passenger. Goines admitted, however, that she was preoccupied with her cell phone until police officers suddenly arrived at her window. Although Goines and the front-seat passenger were detained by the police, they were subsequently released later that same day.

4

Adams now moves to suppress both the heroin and the semi-automatic handgun obtained by law enforcement on October 25, 2013, arguing that he is entitled to challenge the constitutionality of the stop and subsequent search of his person and the car in which he was a passenger. *See* Mot. to Suppress 1–2, ECF No. 17. Additionally, Adams contends that the police lacked probable cause to arrest the occupants of the Dodge sedan (himself included) and to conduct a warrantless search of the vehicle for contraband or evidence of criminal activity. *Id.*; *see also* Def.'s Mem. in Supp. of Mot. to Suppress 6–13, ECF No. 38. In response, the Government argues that Adams' arrest and subsequent search were supported by probable cause and, because he was a mere passenger, he lacks standing to challenge the search of the Dodge. *See* Gov.'s Resp. to Def.'s Pretrial Mots. 2–3, ECF No. 26; Gov.'s Mem. in Opp. to Mot. to Suppress 4–8, ECF No. 39. In the alternative, the Government argues that, even if probable cause was lacking to arrest Adams, the entire encounter can instead be justified as an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). ECF No. 39 at 4–5.

## II. CONCLUSIONS OF LAW

**A.     The search of Adams' person**

**1.     Law enforcement lacked probable cause to arrest and search Adams**

Adams argues that the police lacked probable cause to arrest him and therefore the search of his person was illegal and any fruits of that search must be suppressed. *See* ECF No. 38 at 6–13. Warrantless arrests by law enforcement are permitted "where there is probable cause to believe that someone has committed or is committing a crime." *United States v. Winarske*, 715 F.3d 1063, 1066 (8th Cir. 2013). "A probability or substantial chance of criminal activity, rather than an actual showing of criminal activity is sufficient." *United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008). In making a probable cause determination, "[l]aw enforcement officers have substantial latitude in

5

interpreting and drawing inferences from factual circumstances." *Winarske*, 715 F.3d at 1067. However, the "quantum of information" constituting probable cause must be measured by the particular facts of the case—mere suspicion is never enough. *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). After reviewing the record, the Court concludes that the police lacked probable cause to arrest and search Adams on October 25, 2013.

As an initial matter, the Court first concludes that probable cause did exist to arrest M.E.L. Officer Werner had observed three hand-to-hand transactions between M.E.L. and various individuals during the course of his surveillance that he, in light of his training and experience, reasonably believed to be narcotics transactions. In addition, the information provided to Officer Werner by the confidential informant concerning "Teto"/M.E.L. also supports a finding of probable cause. *See United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006) ("When an informant has provided reliable information in the past or where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination.").

Second, the Court concludes that, because Officer Werner reasonably believed that a fourth drug transaction had taken place between M.E.L. and the front-seat passenger of the Dodge sedan, probable cause existed to search that vehicle under the "automobile exception" to the warrant requirement. *See United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) ("[T]he automobile exception permits the warrantless search of a vehicle if the police had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began."); *see also Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity . . . [police may lawfully] search any area of the vehicle in which the evidence might be found.").

However, the automobile exception, by itself, does not allow police officers to search the

person of a passenger in a vehicle. *See United States v. Di Re*, 332 U.S. 581, 587 (1948) (holding that probable cause to search a car did not justify a body search of the passenger); *see also Wyoming v. Houghton*, 526 U.S. 295, 307–08 (1999) (Breyer, J., concurring) ("[T]he [automobile exception] rule applies only to containers found within automobiles. And it does not extend to the search of a person found in that automobile. [T]he search of a person, including even a limited search of the outer clothing . . . is a very different matter in respect to which the law provides significantly heightened protection.") (internal quotation and citation omitted). In order to search a person, police officers must have probable cause that is particular to the person being searched—mere proximity to another person suspected of criminal activity is not enough. *See Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person."); *see also Sibron v. New York*, 392 U.S. 40, 62–63 (1968).

Here, the Court concludes that Officer Werner did not have sufficient particularized probable cause to search Adams for drugs or other contraband. The suspected fourth drug transaction transpired between M.E.L. and the front-seat passenger, not Adams. Although Officer Werner claims to have observed suspicious behavior on the part of Adams as he approached the vehicle, the Court finds that none of these actions give rise to probable cause sufficient to search his person. Any sudden change in Adams' demeanor or posture is easily explained as a natural or common reaction to a sudden and unexpected police presence. In addition, the fact that Adams placed an object in the map pocket of the seat in front of him only serves as further probable cause to search the vehicle for contraband, not Adams' person. Consequently, the Court concludes that Officer Werner was not justified in searching Adams for evidence of the suspected fourth drug transaction.

The Court additionally concludes that law enforcement did not have probable cause to arrest

Adams and therefore could not have searched him incident to that arrest. According to the Government, Officer Werner had probable cause to arrest Adams because he was justified in believing that Adams was hiding evidence of the suspected fourth drug transaction between M.E.L. and the front-seat passenger of the Dodge. *See* ECF No. 39 at 6. However, after reviewing the particular facts of this case, the Court finds that probable cause to arrest Adams was lacking. Indeed, Officer Werner never observed a hand-to-hand transaction involving Adams, did not see money or narcotics in his possession, and, more importantly, never observed him interact with M.E.L. in any way. Moreover, Officer Werner's subsequent discovery of the "hard object" between Adams buttocks—which he suspected to be narcotics due to the object's small size and location—could not have given rise to the necessary probable cause to make the arrest. *See Sibron*, 392 U.S. at 63 ("It is axiomatic that an incident search may not precede an arrest and serve as part of its justification."). Consequently, Officer Werner's decision to arrest Adams from the outset was based on suspicion, as opposed to a probability of criminal activity, and was therefore improper. *See Wong Sun*, 371 U.S. at 479 ("It is basic that an arrest with or without a warrant must stand upon firmer ground than mere suspicion.").

Thus, although it was reasonable for law enforcement to believe criminal activity was afoot during the parking lot interaction between M.E.L. and the front-seat passenger of the Dodge sedan, sufficient particularized probable cause did not exist to justify the search of Adams' person for evidence of that crime. Furthermore, there was no probable cause to arrest Adams and therefore any search incident to that arrest was improper. Accordingly, the Court concludes that Adams' search and arrest were illegal and the heroin recovered from his person must be suppressed.

### 2. The search of Adams cannot be justified as an investigatory *Terry* stop

Under *Terry v. Ohio,* police are authorized to make an investigatory stop if they have a

reasonable and articulable suspicion of criminal activity. 392 U.S. 1; 25–31 (1968). A reasonable suspicion is a "particularized and objective" basis for suspecting a person of criminal activity. *United States v. Thomas*, 249 F.3d 725, 729 (8th Cir. 2001). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994). In other words, the Government must point to specific, articulable facts that reasonably suggest criminal activity. *Terry*, 392 U.S. at 27. Furthermore, an officer may conduct a limited pat-down search of an individual he is investigating when the officer is justified in believing that the individual is "armed and presently dangerous to the officer or to others." *Id*. at 24.

The Government argues that, even if probable cause was lacking to arrest and search Adams, the entire encounter can instead be justified as an investigatory *Terry* stop. ECF No. 39 at 4–5. The Court disagrees. Simply put, this encounter was not an investigatory stop. The lesser suspicion articulated in *Terry* and its progeny justifies only a lesser intrusion than a full scale arrest; what the law has come to call a "stop and frisk." Defendant Adams was not subjected to a stop and frisk. He was arrested, handcuffed, and taken into police custody. To be lawful, this level of intrusion must be supported by probable cause. Officer Werner testified that he ordered the other officers to move in and take M.E.L. and all of the occupants of the Dodge into custody immediately after observing the suspected fourth drug transaction. Officer Werner did not temporarily detain the occupants of the Dodge only to confirm or deny his suspicion of criminal activity. He instead ordered them all to be arrested. Such an order can only be supported to the degree that there was probable cause to believe that each occupant committed a crime. As to Adams, probable cause was lacking at the moment Officer Werner ordered his arrest. Because it was not one, there is no basis for calling the encounter with Adams a *"Terry* stop".

**B.    The search of the Dodge sedan**

The Government argues that Adams, as a mere passenger in a vehicle, lacks standing to contest the search of the Dodge sedan which resulted in the discovery of the semi-automatic handgun at issue in this case. *See* ECF No. 39 at 6. In contrast, Adams asserts that he is entitled to challenge the search of a vehicle in which he was a passenger, citing to the Supreme Court case *Brendlin v. California*, 551 U.S. 249 (2007). *See* ECF No. 17 at 2.

In *United States v. Crippen*, 627 F.3d 1056 (8th Cir. 2010), the Eighth Circuit addressed the impact *Brendlin* had on the issue of whether a passenger of a vehicle has standing to challenge a search of the vehicle. The court in *Crippen* reiterated that under *United States v. Barragan*, 379 F.3d 524 (8th Cir. 2004), a mere passenger in a vehicle has no legitimate expectation of privacy in the passenger compartment of a vehicle and thus lacks standing to challenge the search of the vehicle. 627 F.3d at 1063. According to the Eighth Circuit, *Brendlin* simply stands for the proposition that a passenger of a vehicle may challenge the legality of the traffic *stop* itself, not a subsequent *search* of the vehicle. *Id.* Because Adams was a mere passenger in the Dodge sedan, this Court concludes that he lacks standing to challenge the search of the vehicle under *Crippen*.

Moreover, even if Adams did have standing to challenge the search of the Dodge, probable cause existed to search the vehicle pursuant to the automobile exception. As stated above, the automobile exception to the warrant requirement allows an officer to perform a warrantless search of a vehicle if the officer has "probable cause to the believe that the vehicle contains contraband or other evidence of a crime." *United States v. Kennedy*, 427 F.3d 1136, 1140–41 (8th Cir. 2005). Here, Officer Werner observed what he reasonably believed to be a fourth drug transaction occur between M.E.L. and the front-seat passenger of the Dodge sedan. Importantly, M.E.L. was seen leaning into the open passenger side window of the vehicle and could have quickly disposed of any evidence of

10

his criminal activity as soon as he noticed the police approaching. Officer Werner therefore had probable cause to believe that contraband could be found inside the vehicle. Accordingly, the Court finds that the semi-automatic handgun should not be suppressed.

### III. RECOMMENDATION

Based upon the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress search and seizure evidence (ECF No. 17) be **GRANTED in part** and **DENIED in part** as follows:

A. To the extent Defendant seeks to suppress the heroin recovered from the search of his person, the motion should be **GRANTED**;

B. To the extent Defendant seeks to suppress the semi-automatic handgun recovered from the search of the Dodge sedan, the motion should be **DENIED**.

DATED: August 5, 2015                                   *s/Franklin L. Noel*
                                                        FRANKLIN L. NOEL
                                                        United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 19, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **August 19, 2015,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.