UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 15-CR-0106(1) (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| DANIEL ALFRED ADAMS, | |
| Defendant. | |

Thomas Calhoun-Lopez, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Shannon R. Elkins, OFFICE OF THE FEDERAL DEFENDER, for defendant Daniel Adams.

Defendant Daniel Adams is charged with conspiracy to possess firearms in furtherance of a drug-trafficking crime, possession of a firearm in furtherance of a drug-trafficking crime, conspiracy to distribute controlled substances, possession of heroin with intent to distribute, and being a felon in possession of a firearm. This matter is before the Court on the parties' objections to Magistrate Judge Franklin L. Noel's Report and Recommendation ("R&R") of August 5, 2015. Judge Noel recommends granting in part and denying in part Adams's motion to suppress evidence. Based on a de novo review, see 28 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(3), the Court sustains the government's objection and overrules Adams's objection. Adams's motion to suppress is denied in its entirety.

I.  BACKGROUND

Officer Jeffrey Werner of the Minneapolis Police Department received a tip from a confidential, reliable informant that a man named "Teto" was selling heroin out of an apartment building located on 22nd Avenue South in Minneapolis.  Other informants had also told Officer Werner that Teto was selling drugs.  Based on this information, Officer Werner believed Teto to be a man whose initials are M.E.L.

On the afternoon of October 25, 2013, Officer Werner set up surveillance of the apartment building.  He observed M.E.L. conduct two brief hand-to-hand exchanges in front of the building with two different people.  Each person walked up to the building, waited until M.E.L. came out, engaged in a hand-to-hand exchange with M.E.L., and then left after the exchange.  Each encounter lasted about ten or fifteen seconds, and the two encounters occurred within about five minutes of each other.

After the second transaction, M.E.L. did not go back inside the building.  Instead, he walked to a nearby shopping center and stood in front of a liquor store.  Shortly after M.E.L. arrived, a woman walked over to him, they spoke for a few minutes, they engaged in a hand-to-hand exchange, and the woman walked away.  Officer Werner, who has extensive training and experience in investigating narcotics, testified that these hand-to-hand exchanges were "textbook" drug sales.

After observing the third transaction, Officer Werner decided to arrest M.E.L. and called for backup. Five additional officers arrived in a total of three cars, one of which was a marked squad car and the other two of which were unmarked. The marked squad car remained at a distance, waiting for Officer Werner's command to move in. Officer Werner got out of his car, but before the officers could arrest M.E.L., they observed M.E.L. approach a grey or silver Dodge sedan that had just parked in the shopping-center lot. There were three adults and one child in the Dodge. One of the adults was later identified as Adams. Adams was seated in the rear, behind the driver.

Officer Werner observed M.E.L. lean into the front passenger-side window of the Dodge. M.E.L.'s forearms were resting on the window ledge and his hands were inside the car. At this point, Officer Werner told the other officers to move in and take everyone into custody. As the marked squad car pulled up behind the Dodge, Officer Werner approached the Dodge on foot. He observed a change in Adams's and the front passenger's facial expressions as they appeared to notice the squad car pulling up behind them. In addition, Adams (who had been leaning back) sat up and appeared to put something into the map pocket behind the driver's seat. Officer Werner could not see Adams's hands, however.

The officers approached the car with their guns drawn and took M.E.L. into custody. Officer Werner then took the passengers out of the car one by one, starting

with the front-seat passenger. Officer Werner handcuffed the front-seat passenger and patted him down. The search did not reveal any weapons or contraband. Officer Werner then took Adams out of the car, handcuffed him, and pat searched him. During the search, Officer Werner felt a hard object between Adams's buttocks, which Officer Werner believed to be narcotics and which was later identified as heroin. The officers then cuffed Adams's hands in front of his body, placed him in a squad car, and attached his handcuffs to the bars of the window so that Adams could not access the item concealed in his buttocks. After Adams was secure, Officer Werner asked another officer to check the map pocket in the Dodge. The officer found a handgun. The officers then transported the suspects to the police station.

## II.  ANALYSIS

### A.  Search of Adams

The government objects to Judge Noel's conclusion that the search of Adams violated the Fourth Amendment and that the heroin found during the search should be suppressed. The government has abandoned its original argument that there was probable cause to arrest Adams. Instead, the government argues that the search and seizure of Adams should be analyzed as a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1 (1968).[1]

---

[1]Alternatively, the government argues that, even if the search was illegal, the heroin should be admitted under the "inevitable discovery" doctrine. *See United States*

The Court agrees with Judge Noel that the officers lacked probable cause to arrest Adams at the time that they took him out of the car at gunpoint and placed him in handcuffs.² At the same time, however, the Court agrees with the government that the officers had the reasonable suspicion necessary to conduct a stop and frisk under *Terry*. The officers had information from a reliable informant that M.E.L. was dealing drugs. Several other informants had also identified M.E.L. as a drug dealer. Officer Werner directly observed M.E.L. engage in three hand-to-hand transactions that, in Officer Werner's experience, were "textbook" drug sales. A few moments after the third sale, Officer Werner observed M.E.L. approach a car in which Adams was a passenger. M.E.L. leaned on the car and engaged another passenger in conversation. M.E.L.'s hands were inside the car, giving him an opportunity to conduct another hand-to-hand transaction. The car arrived in the parking lot of the shopping center just a few minutes after M.E.L. had walked to that parking lot, strongly suggesting that the

---

*v. Glenn*, 152 F.3d 1047, 1049-50 (8th Cir. 1998). Because the Court agrees with the government that the initial stop and seizure of Adams was a permissible *Terry* stop, it need not address the government's alternative argument.

²As discussed below, Officer Werner's discovery of a hard object that he believed to be narcotics concealed in Adams's buttocks gave him probable cause to arrest Adams. The actions that the officers took after that point—placing Adams in the squad car and transporting him to the police station—were therefore justified by probable cause. The question is whether the officers could justifiably remove Adams from the car at gunpoint and handcuff him as part of a *Terry* stop. If they could not, then the discovery of the hard object was the fruit of an illegal arrest.

occupants of the car and M.E.L. had arranged to meet there. In addition, M.E.L. had already engaged in a hand-to-hand transaction in the same parking lot—a transaction that was very similar to the transactions that had taken place in front of the apartment building. Moreover, M.E.L. did not go into any of the stores in the shopping center. Officers could therefore reasonably conclude that M.E.L. was in the parking lot for the purpose of selling drugs, including to the occupants of the car that had arrived at the parking lot just a few minutes after M.E.L.

These facts gave the officers a reasonable suspicion that M.E.L. was selling drugs to the front-seat passenger. Indeed, these facts closely parallel the facts of *United States v. Bustos-Torres*, 396 F.3d 935 (8th Cir. 2005). In *Bustos-Torres*, an officer observed what appeared to be a hand-to-hand drug sale in a parking lot. *Id.* at 939. After the first buyer left in his car, another car pulled into the parking lot. *Id.* The seller from the previous transaction got in the second car and reemerged a few minutes later, after which the car drove away. *Id.* at 939-40. The officers did not see what transpired in the second car while the seller was inside. *Id.* at 940. Nevertheless, the Eighth Circuit held that there was reasonable suspicion to justify a traffic stop of the car as well as pat-down searches of all of the car's occupants. *Id.* at 942-43.

The Court further concludes that the officers' reasonable suspicion encompassed Adams as well as the front-seat passenger. Adams did not just happen to be nearby; he

was a passenger in the same car in which officers reasonably suspected that a drug transaction was taking place. *See United States v. Trogdon*, 789 F.3d 907, 912 (8th Cir. 2015) (where officers could infer that group members were close associates, the entire group's behavior can be taken into account in determining reasonable suspicion). Given M.E.L.'s position relative to the occupants of the car, the front-seat passenger was the most likely buyer of the drugs. But that does not mean that officers could not reasonably suspect all of the occupants of the car (save, perhaps, the child). Notably, in *Bustos-Torres* the Eighth Circuit found reasonable suspicion to detain and frisk *all* of the passengers despite the fact that the officers could not see what had happened in the car. *Bustos-Torres*, 396 F.3d at 942-43.

In this case, the car was a normal-sized sedan, *see* Def. Ex. 3, and the occupants of the car were in close proximity and thus it would have been easy for them to pass small items back and forth. In addition, Officer Werner observed that, as Adams appeared to notice the arrival of the squad car, his facial expression changed and he sat up and appeared to hide something in the map pocket behind the driver's seat.[3] *See Trogdon*,

---

[3] Adams argues that his actions in the car cannot support the search and seizure, as they did not occur until after the seizure process had begun. The Court disagrees. Officer Werner testified that Adams's facial expression changed and he appeared to conceal something after he noticed the squad car pulling up, which was before the seizure commenced. *See Trogdon*, 789 F.3d at 911 (rejecting argument that seizure began before officers got out of the squad car and ordered the defendant to stop); *cf. United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) (rejecting defendant's argument that the seizure occurred when the officers began approaching the group as "contrary to

789 F.3d at 911 (suspect's apparent attempt to conceal something contributed to reasonable suspicion). Considering the totality of the circumstances, the Court concludes that officers would have been justified in conducting an investigative stop and frisk of Adams. *Bustos-Torres*, 396 F.3d at 943 (officers could conduct a pat-down search of suspected drug buyers because "it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction").

The question, then, is whether the Court should treat the short period of Adams's detention up until Officer Werner discovered the heroin as a *Terry* stop that was supported by reasonable suspicion or as an arrest that was not supported by probable cause. Although the question is close, the Court believes that Eighth Circuit case law dictates that the initial detention should be treated as a *Terry* stop.

The Eighth Circuit has made clear that "[t]here is no bright line of demarcation between investigative stops and arrests." *United States v. Guevara*, 731 F.3d 824, 831 (8th Cir. 2013) (citation and quotations omitted). In determining whether a seizure is a *Terry*

---

our precedent"). Moreover, even without considering Adams's reaction to the presence of the squad car, the officers had reasonable suspicion that Adams was involved in a drug transaction. *See Bustos-Torres*, 396 F.3d at 942-43. And because the officers did not frisk Adams until after they saw his reaction to the squad car, that reaction may be considered in determining whether there was reasonable suspicion to conduct a pat search. *See United States v. Davis*, 202 F.3d 1060, 1063 (8th Cir. 2000) (officers may take into account suspect's actions during police encounter in deciding whether to pat search).

stop or an arrest, the subjective intent of the officer is irrelevant if that intent is not communicated to the suspect. *See United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (en banc); *United States v. Danielson*, 728 F.2d 1143, 1146 (8th Cir. 1984). Although officers must use the "the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the *Terry* stop," officers may also take any steps that are reasonably necessary to protect their safety and maintain the status quo. *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999).

Thus, if necessary, an officer may brandish weapons, handcuff a suspect, and place him in a squad car without transforming a *Terry* stop into an arrest. *See United States v. Robinson*, 670 F.3d 874, 877 (8th Cir. 2012) ("It is well established . . . that police officers may handcuff a suspect and place him in a patrol car during an investigative stop in order to protect their personal safety and maintain the status quo."); *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety").

In evaluating whether officers were justified in taking protective measures during a *Terry* stop, the Eighth Circuit has frequently said that officers may reasonably

suspect that persons involved in drug transactions are armed.[4] The Eighth Circuit has also frequently said that officers may, in such circumstances, brandish weapons and handcuff suspects without converting a *Terry* stop into an arrest.[5]

---

[4]*United States v. Newell*, 596 F.3d 876, 880 (8th Cir. 2010) ("While they lacked specific information that Newell was armed, as discussed, dangerous weapons are often used by drug traffickers."); *United States v. Ramires*, 307 F.3d 713, 716 (8th Cir. 2002) (noting that "police were investigating drug activity, which frequently involves weapons"); *Navarrete-Barron*, 192 F.3d at 791 ("At the time of the stop, the officers had a reasonable suspicion that the occupants of the truck had been or were engaged in drug trafficking, which very often is accompanied by dangerous weapons."); *United States v. McMurray*, 34 F.3d 1405, 1410 (8th Cir. 1994) ("The officers' reasonable suspicion that McMurray was dealing drugs provides an adequate basis for them to reasonably believe he might be armed and dangerous, because weapons and violence are frequently associated with drug transactions." (citation and quotations omitted)); *United States v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992) ("The nature of the crime Hicks suspected, drug trafficking, created a wholly credible concern that at least some of the suspects might be armed."); *United States v. Eisenberg*, 807 F.2d 1446, 1451 (8th Cir. 1986) ("The fact that the officers approached the Hoffman vehicle with weapons drawn does not per se transform the stop into an arrest. The police officers involved were all experienced narcotic officers and we cannot say that they acted unreasonably under the circumstances.").

[5]*See Ramires*, 307 F.3d at 714-16 (reports of drug odor from apartment coupled with suspects' attempt to evade police permitted police to effect *Terry* stop using weapons and handcuffs); *Navarrete-Barron*, 192 F.3d at 791 (officers were justified in using weapons and handcuffs to conduct *Terry* stop based on reasonable suspicion that suspects were armed); *McMurray*, 34 F.3d at 1411 ("The district court's finding that the officer's suspicion of drug dealing raised sufficient security concerns to justify the drawing of their guns is not clearly erroneous."); *Miller*, 974 F.2d at 957 (use of handcuffs did not transform *Terry* stop into arrest because defendant was suspected of drug trafficking, which "created a wholly credible concern that at least some of the suspects might be armed"); *Eisenberg*, 807 F.2d at 1451 (conducting a traffic stop with drawn weapons did not transform stop into arrest because officers reasonably suspected occupants of drug trafficking).

True, in most of these cases the suspects were drug *sellers*, whereas in this case Adams was suspected of being a drug *buyer*. But the Eighth Circuit has observed that anyone reasonably suspected of being involved in a drug transaction—whether as seller or buyer—may reasonably be suspected of being armed and dangerous. *See Bustos-Torres*, 396 F.3d at 943 (officers could reasonably suspect that apparent buyers were armed and dangerous). Moreover, in this case, officers were interrupting an apparent drug transaction in progress with the seller still present. In addition, the police were confronting suspects in a car, a situation that is particularly fraught with danger (as the Eighth Circuit has noted, *see United States v. Pajari*, 715 F.2d 1378, 1383 (8th Cir. 1983)). Under these circumstances, the Court concludes that officers could permissibly approach the car with drawn weapons and handcuff the occupants without transforming the *Terry* stop into an arrest.

The length of the detention also counsels in favor of finding that it was a *Terry* stop. Only a short time separated the officers' initiation of the stop and Officer Werner's discovery of the object hidden in Adams's buttocks. As discussed below, that discovery gave the officers probable cause to arrest Adams. The pat search was also consistent with the limited search for weapons permitted under *Terry*. Officer Werner did not reach into Adams's pockets or otherwise exceed the scope of a *Terry* frisk. The

Court therefore concludes that the officers' conduct did not overstep the bounds of a *Terry* stop.

After Officer Werner discovered what he believed to be narcotics hidden in Adams's buttocks, officers placed Adams in a squad car and transported him to a police station. At this point, Adams had unquestionably been arrested. *See Hayes v. Florida*, 470 U.S. 811, 815-16 (1985). This was a lawful arrest, however, because Officer Werner's discovery gave him probable cause to arrest Adams. *See United States v. Davis*, 457 F.3d 817, 823 (8th Cir. 2006) (suspect's attempt to conceal something during traffic stop, coupled with discovery of what officer believed to be narcotics in suspect's buttocks area, gave officer probable cause to believe suspect was attempting to conceal narcotics). The Court therefore sustains the government's objection and denies Adams's motion insofar as he seeks to suppress the heroin.

*B. Search of Car*

Adams objects to Judge Noel's conclusion that he cannot challenge the search of the car because he lacks a reasonable expectation of privacy in the car. Adams does not dispute that he lacks a reasonable expectation of privacy in the car, but argues that, as a passenger, he is nevertheless entitled to object to the *traffic stop* of the car as well as any fruits of that stop. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) (passenger may object to constitutionality of traffic stop); *United States v. Ameling*, 328 F.3d 443, 446 n.3

(8th Cir. 2003) (noting that passenger in vehicle could object to the traffic stop and argue that evidence should be suppressed as a fruit of the illegal stop).

The Court has concluded, however, that the traffic stop—that is, the detention of the car and its occupants—was valid under *Terry*, and thus Adams's argument fails. The discovery of the handgun was not the fruit of an illegal detention because the detention was legal. And because Adams lacks a reasonable expectation of privacy in the car, he cannot object to the fact or the scope of the subsequent search of the car. *See United States v. Anguiano*, 795 F.3d 873, 877-78 (8th Cir. 2015) (mere passenger lacked reasonable expectation of privacy in vehicle).

In any event, because the officers had the right to conduct a *Terry* stop and a limited search for weapons, the search of the car was legal. *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013). In addition, after discovering contraband on Adams, the officers had probable cause to believe that contraband could be found in the car, particularly because Officer Werner had observed Adams appear to hide something in the map pocket behind the driver's seat. The officers therefore had the right to search the car under the automobile exception to the warrant requirement. *United States v. Hambrick*, 630 F.3d 742, 747 (8th Cir. 2011). For these reasons, the Court overrules Adams's objection and denies his motion insofar as it seeks to suppress the gun found in the car.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES defendant's objection [ECF No. 109] and SUSTAINS the government's objection [ECF No. 111].  IT IS HEREBY ORDERED THAT:

1. The R&R [ECF No. 58] is ADOPTED IN PART and REJECTED IN PART.

2. Defendant Daniel Adams's motion to suppress evidence [ECF No. 17] is DENIED.

Dated:  October 22, 2015

    s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge